# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEFFREY ISAACS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | 17-11221-FDS |
| v. ) | |
| ) | |
| UNITED STATES DEPARTMENT ) | |
| OF EDUCATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER
## ON DEFENDANT'S PARTIAL MOTION TO DISMISS

**SAYLOR, J.**

      This matter arises out of a long-standing dispute between a former medical resident and a medical school. Plaintiff Jeffrey Isaacs has brought suit against the Department of Education alleging, among other things, that its Office for Civil Rights ("OCR") failed to investigate the circumstances surrounding his termination from Dartmouth-Hitchcock Medical Center in New Hampshire. Isaacs has asserted two claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). In Count 1, he contends that OCR's decision to deny his appeal to investigate his administrative complaint was an "arbitrary and capricious" agency action in violation of the APA. In Count 2, he contends that the Office of Federal Student Aid's decision to deny his appeal to discharge more than $200,000 in student loan debt was similarly "arbitrary and capricious."

      Defendant has moved to dismiss Count 1 on the grounds of sovereign immunity and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, the

Court finds that sovereign immunity has not been waived, and the motion will be granted.

I. **Background**

   A. **Factual Background**

The facts are set forth as described in the amended complaint and public record. Because the government has only moved to dismiss Count 1 of the amended complaint, this memorandum and order will not address factual allegations solely related to plaintiff's claim concerning the Office of Federal Student Aid.

Dr. Jeffrey Isaacs is a resident of Pennsylvania. (Compl. ¶ 14). In 1997, while he was an undergraduate at Dartmouth College, he suffered a head injury because of an incident with an intoxicated student. (*Id.* ¶ 18). The head injury caused long-lasting effects, including "post-concussion syndrome," and hindered his ability to finish his pre-med course requirements. (*Id.*). He dropped several difficult classes and ultimately obtained a degree in computer science. (*Id.*). He went on to attend the Wharton School at the University of Pennsylvania and received a Masters in Business Administration there. (*Id.* ¶¶ 14, 19). By 2005, he had completed the pre-med course requirements that he did not finish at Dartmouth. (*Id.* ¶ 19).

In 2005, Isaacs enrolled at the Keck School of Medicine at the University of Southern California. (*Id.* ¶ 20). However, during his first year, there was what he calls "[a]n unfortunate series of circumstances." (*Id.*). The complaint states that there was an allegation of unprofessionalism brought by one of his classmates. (*Id.*).[1] Keck suspended Isaacs in February 2006, and ultimately expelled him. *See In re: Jeffrey D. Isaacs, M.D.*, N.H. Bd. of Med., Docket

---

[1] Isaacs was accused of harassment. *See Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, 2014 WL 1572559, at *2 (D.N.H. Apr. 18, 2014).

No. 13-07, (Mar. 11, 2014).[2] Isaacs subsequently sued Keck, and ultimately two settlements were reached. (Compl. ¶ 21). The first settlement, which was agreed to in September 2007, sealed certain school records relating to Isaacs. (*Id.*). The second settlement, which was entered into in 2008, "discharge[d] all contracts and agreements" relating to his time at Keck. (*Id.*).

In order to pursue a medical degree, Isaacs enrolled in the American University of the Caribbean Medical School. (*Id.* ¶ 22). He received a degree from that institution in 2010. (*Id.*). He received more than $200,000 in federal student aid to pay for his tuition. (*Id.*). He took the United States Medical Licensing Examination, and his score "exceeded that of the average neurosurgeon, his desired specialty." (*Id.*).

After graduating, Isaacs began a surgical program residency at the University of Arizona. (*Id.* ¶ 23). By his third day, supervisors described him as "far behind his peers" and lacking "technical ability." (*Id.*). The complaint alleges that Isaacs had "perfectly completed the only procedure, a sub-cuticular suture, that he had been required to perform." (*Id.*). He resigned from the residency after approximately six weeks. (*Id.*).

Isaacs then received a psychiatric residency position at Dartmouth-Hitchcock Medical Center in New Hampshire in 2011. (*Id.* ¶ 24). In his application, he "omitted both his attendance at [Keck] and his aborted residency at [the University of Arizona]." *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, 2014 WL 1572559, at *2 (D.N.H. Apr. 18, 2014) (granting summary judgment to defendants).[3] The complaint alleges that immediately upon his arrival at Dartmouth-Hitchcock, he was "subject to mistreatment and abuse." (Compl. ¶ 25). Specifically,

---

[2] On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court normally cannot consider evidence outside the complaint and attached exhibits without converting the motion into a motion for summary judgment. However, the First Circuit has recognized "narrow exceptions" to that rule, including "official public records." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

[3] The complaint alleges that Isaacs had disclosed his prior residency before joining Dartmouth-Hitchcock. (Compl. ¶¶ 24, 30).

3

it alleges that he was ordered to "perform two unnecessary prostate examinations" and was treated differently from other residents. (*Id.*). Nevertheless, according to the complaint, he received "predominately positive reviews during [his] psychiatry rotations." (*Id.* ¶ 26).

It appears that relatively early in his tenure at Dartmouth-Hitchcock, Isaacs was placed on probation. (*Id.*). "[T]he stress of being placed on probation," coupled with "criticism from superiors" "led to the development of significant health problems." (*Id.*). The complaint alleges that he developed a severe sleep disorder and requested medical leave to recuperate. (*Id.* ¶ 27). However, his supervisors denied his request for leave. (*Id.*). The complaint alleges that the sleep disorder also stemmed from his head injury that he suffered at Dartmouth College in 1997. (*Id.* ¶ 29).

In January 2012, a supervisor discovered that Isaacs had previously been a resident at the University of Arizona. (*Id.* ¶ 30). A confrontation with the supervisor led to Isaacs suffering a "psychological crisis." (*Id.*). On March 19, 2012, Dartmouth-Hitchcock issued a letter to Isaacs stating that he was being terminated for his failure to disclose his record at Keck and his Arizona residency. (*Id.* ¶ 31). Isaacs acknowledges that he never disclosed his record at Keck, but contends that he did so because he believed his prior litigation sealed all documents relating to his attendance there. (*Id.* ¶ 44). The complaint alleges that he has since applied for a residency at "nearly every hospital in the country," but that he has been denied each time. (*Id.* ¶ 47).

The New Hampshire Board of Medicine revoked Isaacs's medical license and found that his termination from Dartmouth-Hitchcock was appropriate because he concealed material information in his residency application. *See In re: Jeffrey D. Isaacs, M.D.*, at 8. The Board of Medicine further reprimanded him for not only failing to provide any "credible evidence" in support of his position, but also "knowingly" making a false statement. *Id.* at 8-9.

Isaacs alleges that he "repeatedly attempted to have Dartmouth investigate his claims" that he was terminated "without any of the administrative procedures established by Dartmouth policies." (Compl. ¶¶ 31-32). The complaint alleges that Dartmouth-Hitchcock declined to investigate his claims for two years. (*Id.* ¶ 32). Frustrated with what he perceived to be "obfuscations and denials," Isaacs filed two suits *pro se*: the first was in the District of New Hampshire, and the second was in the Eastern District of Pennsylvania. (*Id.* ¶¶ 32-33).[4] Both actions were eventually resolved against him; the former on summary judgment, and the latter for lack of personal jurisdiction over the named defendants. (*Id.* ¶ 33).

On April 19, 2014, Isaacs e-mailed a complaint to OCR. (*Id.* ¶ 34). The e-mail suggested that Dartmouth-Hitchcock had engaged in "assault in hazing" and that then-Dartmouth College President Jim Yong Kim participated in "evidence destruction." (Compl. Ex. A at 2). The e-mail further stated that all federal judges in New Hampshire were biased and would not fairly adjudicate his claims. (*Id.*).

Approximately six months elapsed before OCR replied. On October 16, 2014, Jane Lopez, an OCR attorney, attempted to reach Isaacs by telephone. (Compl. ¶ 35).[5] She then sent Isaacs an e-mail to set up a phone call, which occurred the next day. (*Id.*). During the call, Lopez purportedly stated that there had previously been complaints against Dartmouth-Hitchcock, and that the Department of Education was investigating the hospital in response to OCR-related complaints. (*Id.*).

However, soon afterward, Isaacs received a letter dated October 17, 2014, which stated

---

[4] Exhibit A to the amended complaint indicates that Isaacs had also filed suit in the Western District of Texas to obtain evidence from the federal judiciary's PACER system. In addition, as described later in this memorandum and order, plaintiff has filed four separate actions in the District of New Hampshire.

[5] The complaint incorrectly states that Lopez called Isaacs on October 16, 2017. (Compl. ¶ 35).

5

that OCR was "closing" his complaint. (*Id.* ¶ 36; Compl. Ex. B). The letter stated that the complaint was untimely because "OCR generally does not investigate allegations [of discrimination] that are filed more than 180 days after the date of the alleged discrimination," and Isaacs filed his complaint in April 2014, more than two years after the purported misconduct. (Compl. Ex. B at 2).

According to the OCR Case Processing Manual then in effect, a waiver of the 180-day filing requirement could be granted for good cause shown. (*Id.*).[6] OCR stated that Isaacs had not presented any information that would warrant such a waiver. (*Id.*). Specifically, OCR stated that Isaacs had not established that he was "unable to file a complaint with OCR earlier due to incapacitation." (*Id.*). The letter noted that as early as January 2012, he had contacted the police, sent letters to the former president of Dartmouth College, and filed multiple suits. The

---

[6] The reasons provided in the manual are the following:

(a) The complainant could not reasonably be expected to know the act was discriminatory within the 180-day period, and the complaint allegation was filed within 60 days after the complainant became aware of the alleged discrimination (note that lack of previous awareness of OCR or the civil rights laws enforced by OCR is not a basis for a waiver);

(b) The complainant was unable to file a complaint because of incapacitating illness or other incapacitating circumstances during the 180-day period, and the complaint allegation was filed within 60 days after the period of incapacitation ended;

(c) The complainant filed a complaint alleging the same discriminatory conduct within the 180-day period with another federal, state, or local civil rights enforcement agency, or federal or state court, and filed a complaint with OCR within 60 days after the other agency had completed its investigation or, in the case of a court, reached a determination, or the agency or court notified the complainant that it would take no further action;

(d) The complainant filed, within the 180-day period, an internal grievance with a recipient of federal financial assistance, or a due process hearing, alleging the same discriminatory conduct that is the subject of the OCR complaint, and the complaint is filed no later than 60 days after the internal grievance is concluded; or

(e) Unique circumstances generated by OCR's action have adversely affected the complainant.

(Compl. Ex. B at 2).

6

letter concluded by stating that any additional questions should be directed to Lopez, with whom Isaacs had already spoken. (*Id.* at 3).

Isaacs e-mailed Lopez on November 5, 2014, and explained that he would appeal OCR's decision. (Compl. ¶ 38). He claimed that he had shown good cause for a waiver because he had two pending federal lawsuits when the complaint was filed. In addition, he claimed that he only learned in early 2014 that "Dartmouth never initiated an internal grievance investigation, after informing [him] that one would occur." (*Id.*). Lopez replied that she would treat his e-mail as an appeal and that he should submit any additional documents or information he thought relevant by December 16, 2014. (*Id.* ¶ 39; Compl. Ex. C).

Isaacs submitted a letter to OCR on December 12, 2014, alleging that OCR incorrectly determined that the "last discriminatory act against [him] occurred in 2012." (Compl. Ex. D at 1). The letter claimed that Dartmouth-Hitchcock and the Dartmouth College administration were "openly flaunting the fact that they would not investigate [his] claims." (*Id.*). Included in the letter were excerpts from depositions with various hospital and Dartmouth College officials that he claimed supported his claims of discrimination. (*Id.* at 2).[7] OCR sent a letter to Isaacs dated August 14, 2017, finding that "the issues raised in your appeal do not warrant a change in OCR's disposition of your case." (Compl. Ex. E).

### B. **Procedural Background**

Isaacs filed suit against the Department of Education on June 30, 2017. An amended complaint was then filed on November 7, 2017, asserting two claims against defendant: a claim

---

[7] For example, plaintiff cited a portion of a deposition with his direct supervisor at Dartmouth-Hitchcock, Dr. Christine Finn. The quoted portion is as follows:

> Question: Do you know if anyone's ever investigated that unnecessary DREs [digital rectal exams] have been alleged?
>
> Answer: Not that I'm aware of.

7

for violation of the APA by OCR (Count 1) and a claim for violation of the APA by the Department of Education's Office of Federal Student Aid (Count 2). Defendant has moved to dismiss Count 1 on the basis of sovereign immunity and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Analysis

"Under settled principles of sovereign immunity, 'the United States, as sovereign, is immune from suit, save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Dalm*, 494 U.S. 596, 608 (1990) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)) (internal quotation marks and alterations omitted); *see also* Charles A. Wright & Arthur R. Miller, 14 Fed. Prac. & Proc. § 3654 (4th ed.) ("[T]he absence of consent by the United States to suit has been treated by courts as a fundamental defect that deprives the district court of subject matter jurisdiction."). Defendant, an as an agency of the United States, is also entitled to sovereign immunity. *Sarit v. U.S. Drug Enforcement Admin.*, 987 F.2d 10, 16 (1st Cir. 1993). A plaintiff bears the "burden of proving [that] sovereign immunity has been waived." *Mahon v. United States*, 742 F.3d 11, 14 (1st Cir. 2014).

The Administrative Procedure Act provides an explicit waiver of sovereign immunity for individuals seeking equitable relief if they have suffered "a legal wrong because of agency action." 5 U.S.C. § 702; *see also Sarit*, 987 F.2d at 16. Here, plaintiff appears to seek an order from this Court directing OCR to investigate Dartmouth-Hitchcock. In addition, judicial review is available where there is a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. However, the APA further specifies that sovereign immunity is not waived where "agency action is committed to agency discretion by law." *Id.* § 701(a)(2).

8

Plaintiff contends that judicial review is possible because OCR's Case Processing Manual "created standards by which to evaluate OCR's refusal to investigate" his complaint. (Mem. in Opp. at 3). However, this "fails to account for the applicable language which accords the OCR, not the Court, the responsibility and discretion to award a waiver of the filing time limit." *Kamps v. Baylor Univ.*, 2013 WL 12100452, at *5 (W.D. Tex. Oct. 30, 2013). "Both 34 C.F.R. § 110.31(a) and Article I, § 107 of the OCR Case Processing Manual provide that *the Department of Education may*, for good cause shown, extend the 180-day time limit for filing a complaint of discrimination." *Id.* (emphasis in original) (internal quotation marks omitted).

The complaint alleges that Dartmouth-Hitchcock discriminated against plaintiff in 2011 and early 2012. (Compl. ¶¶ 24-31). No complaint was filed with OCR until April 2014, well past the 180-day deadline for filing a complaint. (*Id.* ¶ 34). It was within OCR's discretion whether to grant a waiver for the 180-day deadline. Accordingly, OCR's decision to deny plaintiff's appeal is an agency action "committed to agency discretion by law," and sovereign immunity has not been waived. *See* 5 U.S.C. § 701(a)(2); *Sherman v. Black*, 315 Fed. Appx. 347, 348 (2d Cir. 2009) ("the OCR's decision not to commence enforcement proceedings is discretionary"); *Mass. Pub. Interest Research Grp. v. U.S. Nuclear Regulatory Comm'n*, 852 F.2d 9, 14 (1st Cir. 1988).

In addition, plaintiff's suggestion that he lacks an adequate alternative remedy is incorrect. He has filed no fewer than four separate actions against Dartmouth-Hitchcock, the Trustees of Dartmouth College, former Dartmouth President Kim, the New Hampshire Board of Medicine, and various other defendants in the District of New Hampshire. *See Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, No. 12-cv-040-LM; *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, No. 12-cv-413-SM; *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, No. 14-cv-007-LM; *Isaacs v.*

*Dartmouth-Hitchcock Med. Ctr.*, No. 17-cv-040-LM.[8] In these suits, he brought a litany of claims against defendants, including substantive and procedural due process violations, disability discrimination, retaliation, wrongful discharge, violation of the New Hampshire Law Against Discrimination, breach of contract, breach of the covenant of good faith and fair dealing, negligent misrepresentation, violation of Section 504 of the Rehabilitation Act of 1973, violation of the ADA, and common-law fraud. *See, e.g.*, *Isaacs v. Trustees of Dartmouth College*, 2018 WL 734182 (D.N.H. Feb. 5, 2018); *Isaacs v. Trustees of Dartmouth College¸* 2017 WL 4857433 (D.N.H. Oct. 24, 2017); *Isaacs v. Trustees of Dartmouth College¸* 2017 WL 2881130 (D.N.H. July 12, 2017); *Isaacs*, 2014 WL 1572559. The fact that essentially all claims have been dismissed or resolved against plaintiff on summary judgment does not undermine the fact that he had an adequate remedy: "a suit against the [entity engaged in the alleged discrimination]." *See Pudlin v. Office for (Not of) Civil Rights of the U.S. Dep't of Educ.*, 186 F. Supp. 3d 288, 293 (S.D.N.Y. 2016). Therefore, OCR's handling of plaintiff's administrative complaint is not subject to judicial review, and Count 1 will be dismissed.

### III. Conclusion

For the foregoing reasons, defendant's partial motion to dismiss is GRANTED.

**So Ordered.**

Dated: March 12, 2018

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

---

[8] It appears that civil action nos. 12-413-SM and 14-007-LM were consolidated with 12-040-LM.